IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| NIKISHA M. JACKSON, | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 3:18-CV-937-M(BH) |
| | § | |
| WELLS FARGO HOME MORTGAGE, | § | |
| Defendant. | § | Pretrial Management |

### FINDINGS, CONCLUSIONS, AND RECOMMENDATION

By *Special Order No. 3-251*, this case was automatically referred for full case management. Before the Court for recommendation is *Plaintiff's Motion to Remand to State Court, the 192nd District Court*, filed April 23, 2018 (doc. 7). Based on the relevant filings and applicable law, the motion should be **DENIED**.

### I. BACKGROUND

This case involves the foreclosure of property located at 2030 Chevella Drive, Dallas, Texas 75232 (the Property). (*See* doc. 1-4 at 4-5.)[1] On March 28, 2018, Nikisha M. Jackson (Plaintiff) filed this *pro se* suit against Wells Fargo Home Mortgage (Defendant) in the 192nd District Court of Dallas County, Texas. (*See id*. at 2-13.) She appears to assert claims for breach of contract and anticipatory breach of contract, as well as claims for violations of the Texas Debt Collection Practices Act, Texas Property Code, and Texas Finance Code. (*Id*. at 6-8.) She seeks statutory damages, actual damages, exemplary damages, pre-judgment and post-judgment interest, costs, and attorney's fees. (*Id*. at 12.) She also seeks a declaratory judgment ordering mediation and declaring that any attempt to foreclose is prohibited during the process of litigation and/or mediation, injunctive relief "to bar

---

[1] Citations to the record refer to the CM/ECF system page number at the top of each page rather than the page numbers at the bottom of each filing.

any transfer of any interest of her Property," and a temporary restraining order to prevent Defendant from selling or taking possession of the Property. (*Id*. at 8-11.)

Plaintiff alleges that she is the homestead owner of the Property. (*Id*. at 2.) The Property is financed by a mortgage that is serviced by Defendant. (*Id*.)[2] On October 5, 2016, Plaintiff became unemployed, and Defendant "authorized an Unemployment Loan Forbearance," which permitted her to make payments of $25.00 for six months. (*Id*. at 2-3.) She alleges that under the forbearance agreement, she "could pay the forbearance payments monthly, or in one lump sum." (*Id*. at 3.) Plaintiff made her first payment of $25.00 along with "a lump sum payment of $1,800" to cover the payments for the remaining five months. (*Id*.) On July 28, 2017, Plaintiff began a new payment plan under which she made monthly payments of $1,290.00. (*Id*.) She made those monthly payments "until Defendant notified her that she was ineligible because of an error that was made." (*Id*.) Plaintiff alleges that the only payments she has "missed were during the approved forbearance period." (*Id*.) Defendant "contacted [her] to convey that the only option for her was to apply for a Short Sale." (*Id*. at 3-4; *see* doc. 7 at 18.) Plaintiff offered to remit the payments she missed during the period of forbearance, "minus the overpayments made during the [f]orbearance," but Defendant refused her offer, informing "her that the payment would have been short . . . ." (doc. 1-4 at 3-4.)

On February 21, 2018, Defendant notified Plaintiff that "the total amount required to cure the default under the note and deed of trust through February 16, 2018 [was] $13,553.38 and the total amount required to payoff the debt through February 16, 2018 [was] $247,246.81." (doc. 7 at 18; *see* doc. 1-4 at 3.) She believes that the amount required to cure the default is erroneous. (doc. 1-4 at

---

[2] In her motion to remand, Plaintiff clarifies that she purchased the Property on September 24, 2007 "through a Fannie Mae loan, which is now currently serviced by the Defendant." (doc. 7 at 5.)

2.) On March 20, 2018, Plaintiff notified Defendant "of the inaccuracy in their accounting and requested that they provide a loan payment history for the life of the loan," but Defendant "has failed to comply with the request, choosing instead to initiate foreclosure." (*Id*.) The Property was "posted for foreclosure in a Sheriff's Sale set for April 3, 2018." (*Id*. at 3.) Plaintiff filed this action to prevent the foreclosure of the Property. (*Id*. at 2.)

On April 13, 2018, Defendant removed this action to federal court on the basis of diversity jurisdiction under 28 U.S.C. § 1332. (doc. 1 at 1.) On April 23, 2018, Plaintiff moved to remand the case to state court for lack of subject matter jurisdiction. (*See* doc. 7 at 1.) Defendant filed a response on May 14, 2018, and Plaintiff filed a reply on June 11, 2018. (docs. 11; 14.) The motion is now ripe for recommendation.

## II. MOTION TO REMAND

Plaintiff argues that "[r]emand is appropriate because this [C]ourt does not have subject matter jurisdiction over the cause of action," as "there is no federal question jurisdiction," and "Defendant has not successfully and completely demonstrated diversity jurisdiction to this [C]ourt." (doc. 7 at 1.)

Any civil action brought in state court may be removed to federal court if the district court has original jurisdiction over that action. 28 U.S.C. § 1441(a). A district court's original jurisdiction is of two types: federal question jurisdiction and diversity jurisdiction. 28 U.S.C. §§ 1331, 1332. Federal question jurisdiction exists in all civil actions arising under the Constitution, laws, or treaties of the United States. *Id*. § 1331. Diversity jurisdiction exists in all civil actions where the amount in controversy exceeds $75,000.00, exclusive of interests and costs, and there is diversity of citizenship between the parties. *Id*. § 1332(a).

To determine whether it has federal jurisdiction over the removed case, the court must "consider the claims in the state court petition as they existed at the time of removal." *Manguno v. Prudential Prop. and Cas. Ins. Co.*, 276 F.3d 720, 723 (5th Cir. 2002) (citing *Cavallini v. State Farm Mut. Auto Ins. Co.*, 44 F.3d 256, 264 (5th Cir. 1995)). "The removing party bears the burden of showing that federal jurisdiction exists and that removal was proper." *Id.* "[A]ny doubt about the propriety of removal, must be resolved in favor of remand." *Gasch v. Hartford Acc. & Indem. Co.*, 491 F.3d 278, 281–82 (5th Cir. 2007).

Because no federal question is presented in this case, removal was proper only if Defendant met its burden of showing that there is diversity of citizenship between the parties, and that the amount in controversy exceeds $75,000.00. *See Carillo v. JP Morgan Chase Bank, N.A.*, No. EP-12-CV-222-KC, 2012 WL 3276971, at *3 (W.D. Tex. Aug. 9, 2012).

**A.    Diversity of Citizenship**

Plaintiff argues that "complete diversity does not exist in this specific litigation" because "Defendant is a citizen of the same state as Plaintiff." (doc. 7 at 4.)

An action removable based on diversity jurisdiction may not be removed if "any of the parties in interest properly joined and served as defendants is a citizen of the State in which such action is brought." 28 U.S.C. § 1441(b). A case that is removed under § 1332 must have "complete diversity" of citizenship. *Lincoln Prop. Co. v. Roche*, 546 U.S. 81, 84 (2005); *see also* 28 U.S.C. § 1332. This means that a plaintiff may not share citizenship with any defendant. *Whalen v. Carter*, 954 F.2d 1087, 1094 (5th Cir. 1992). The party asserting diversity jurisdiction must "distinctly and affirmatively" allege the citizenship of all the parties. *Getty Oil Corp. v. Ins. Co. of N. Am.*, 841 F.2d 1254, 1259 (5th Cir. 1988).

4

Here, it is undisputed that Plaintiff is domiciled in and is a citizen of Texas. *See Coury v. Prot*, 85 F.3d 244, 249 (5th Cir. 1996) (noting that individuals are citizens of the states in which they are domiciled). Plaintiff argues that Defendant is a citizen of Texas because Defendant has "more than 150 banking locations in and around Dallas County, where its business is conducted." (doc. 7 at 2.) For diversity jurisdiction purposes, however, a national bank "is a citizen of the State in which its main office, as set forth in its articles of association, is located." *Wachovia Bank, N.A. v. Schmidt*, 546 U.S. 303, 307 (2006). Defendant, as a division of Wells Fargo Bank, N.A., is a citizen of South Dakota because its "articles of association designate Sioux Falls, South Dakota, as the location of its main offices." *Ainsworth v. Wells Fargo Home Mortg. Inc.*, No. 3:14-CV-1942-M, 2014 WL 7273945, at *4 (N.D. Tex. Dec. 22, 2014). Defendant has met its burden to show that the parties are diverse for purposes of diversity jurisdiction.

**B.    Amount in Controversy**

Plaintiff also argues that "this action does not involve an amount in controversy that exceeds $75,000" because "the amount of the controversy in this litigation" is $13,553.38, the amount required to cure default. (doc. 7 at 4.)

The amount-in-controversy threshold is a necessary element that must be met before a federal court can properly exercise diversity jurisdiction. *Arbaugh v. Y & H Corp.*, 546 U.S. 500, 514 (2006). In a motion to remand, the amount in controversy is determined from the plaintiff's perspective. *Burr v. JP Morgan Chase Bank, N.A.*, No. 4:11-CV-03519, 2012 WL 1016121, at *2 (S.D. Tex. Mar. 23, 2012). The defendant, as the removing party, bears the burden of establishing by a preponderance of the evidence that the amount in controversy exceeds $75,000.00. *De Aguilar v. Boeing Co.*, 11 F.3d 55, 58 (5th Cir. 1993). The defendant may satisfy this burden by

5

demonstrating that it is facially apparent from the plaintiff's petition that the claim likely exceeds $75,000.00, or by setting forth the facts in controversy that support a finding of the requisite amount. *Allen v. R & H Oil & Gas Co.*, 63 F.3d 1326, 1335 (5th Cir. 1995). "Courts [] consider the nature of the claims and the types of damages sought to determine whether it is facially apparent that the amount in controversy meets [the] jurisdictional requirements." *Hannah v. Allstate Texas Lloyd's*, No. EP-11-CV-269-KC, 2011 WL 5325257, at *2 (W.D. Tex. Nov. 2, 2011) (internal quotations omitted).

In actions where the plaintiff seeks injunctive or declaratory relief, "it is well established that the amount in controversy is measured by the value of the object of the litigation." *Hunt v. Washington State Apple Adver. Comm'n*, 432 U.S. 333, 347 (1977). The "object of the litigation" is "the value of the right to be protected or the extent of the injury to be prevented." *McDonald v. Deutsche Bank Nat. Trust Co.*, No. 3:11-CV-2691-B, 2011 WL 6396628, at *2 (N.D. Tex. Dec. 20, 2011) (citing *Hartford Ins. Group v. Lou-Con Inc.*, 293 F.3d 908, 910 (5th Cir. 2002)). If the injury sought to be prevented is the loss of title to property, then the property itself becomes the object of the litigation. *Burr*, 2012 WL 1016121, at *3. Accordingly, where the plaintiff puts the title to property in dispute, the value of the property is the proper measure of the amount in controversy. *Id.*; *accord McDonald*, 2011 WL 6396628, at *2 (citing *Waller v. Prof'l Ins. Corp.*, 296 F.2d 545, 547–48 (5th Cir. 1961)) ("When 'a right to property is called into question in its entirety, the value of the property controls the amount in controversy.'").

Although Plaintiff asserts that the amount in controversy is only the $13,553.38 required to cure default on her mortgage, her original petition specifically requests actual damages, exemplary

6

damages, statutory damages, and attorney's fees.[3] (doc. 1-4 at 12.) While Plaintiff does not place a dollar amount on the recovery she seeks,[4] her petition makes several allegations that put the title to the Property in dispute. In her request for injunctive relief, she alleges that the Property is her homestead, and she "will be irreparably injured without adequate remedy at law if the foreclosure is permitted to take place and [her] use and enjoyment of the Property is impaired." (*Id*. at 9.) She requests a temporary restraining order to prevent Defendant from "selling or taking possession of [the Property] . . . or from otherwise disturbing or attempting to disturb [her] peaceable possession and enjoyment of [the Property]," and alleges that "harm to [her] is imminent because [she] will lose the use of her property as her homestead." (*Id*. at 11.) With these allegations, Plaintiff calls into question the right to the Property in its entirety and makes it the object of the litigation. The value of the Property is therefore the proper measure of the amount in controversy. *See Merryman v. JPMorgan Chase*, No. 3:12-CV-2156-M, 2012 WL 5409735, at *7 (N.D. Tex. Oct. 12, 2012); *see also Brooks v. Wells Fargo Bank, N.A.*, No. 3:15-CV-245-L, 2015 WL 390674, at *3 (N.D. Tex. Jan. 29, 2015).

To support its contention that the Property is worth more than $75,000.00, Defendant attached to its removal notice an appraisal report by the Dallas County Appraisal District (DCAD) showing that the 2017 certified market value of the Property was $236,290. (doc. 1-10 at 2.) Plaintiff does not object or dispute Defendant's contentions regarding the Property's value, and includes an appraisal report from the DCAD showing that the 2018 proposed market value of the Property is

---

[3] Exemplary damages and attorney's fees may be included in calculating the amount in controversy. *Carter v. Westlex Corp.*, 643 F. App'x 371, 376 (5th Cir. 2016) (finding "no error in including exemplary damages in the amount-in-controversy calculation"); *Manguno v. Prudential Prop. & Cas. Ins. Co.*, 276 F.3d 720, 723 (5th Cir. 2002) (stating that attorney's fees may be "included as part of the amount in controversy" if a state statute provides for such fees).

[4] Plaintiff only notes that she "seeks damages less than $500,000 and non-monetary relief." (doc. 1-4 at 9.)

$232,280. (*See* doc. 7 at 13.) Defendant has met its burden to show that the amount in controversy is worth more than $75,000.00.

Because Defendant has shown that there is diversity of citizenship and the amount in controversy exceeds $75,000.00, removal was proper and the Court has subject matter jurisdiction over this suit. Plaintiff's motion to remand should be denied.

### III. RECOMMENDATION

Plaintiff's motion remand should be **DENIED**.

**SO RECOMMENDED this 23rd day of July, 2018.**

_____
IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE

### INSTRUCTIONS FOR SERVICE AND NOTICE OF RIGHT TO APPEAL/OBJECT

A copy of these findings, conclusions and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

_____
IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE