**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| **NIKISHA M. JACKSON,** | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | **Civil Action No. 3:18-CV-937-M-BH** |
| | § | |
| **WELLS FARGO HOME MORTGAGE,** | § | |
| **Defendant.** | § | **Referred to U.S. Magistrate Judge**[1] |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION**

Before the Court for recommendation is *Defendant's Motion to Dismiss and Brief in Support*,

filed September 21, 2018 (doc. 17). Based on the relevant filings and applicable law, the motion

should be **GRANTED in part**, and the plaintiff's remaining claims should be dismissed *sua sponte*.

**I. BACKGROUND**

This case involves the attempted foreclosure of real property located at 2030 Chevella Drive,

Dallas, Texas 75232 (the Property). (*See* doc. 1-4 at 4-5.)[2] On September 24, 2007, Nikisha M.

Jackson (Plaintiff) executed a note (Note) in favor of Primary Capital Advisors LLC (Primary), for

a loan in the principal amount of $239,800.00. (doc. 18-1 at 2-6.) She also executed a deed of trust

(Deed of Trust) that granted a security interest in the Property to the "Lender," identified as Primary

or "any holder of the Note," to secure repayment under the Note. (*Id*. at 8-23.) The Deed of Trust

named Mortgage Electronic Registration Systems, Inc. (MERS) as the nominee for Lender and its

successors and assigns and as the beneficiary of the Deed of Trust. (*Id*. at 8.) As Lender's nominee,

MERS had the right to exercise any and all of the interests Plaintiff granted Lender, including

---

[1] By *Special Order No. 3-251*, this case was automatically referred for full case management, including the determination of non-dispositive motion and issuance of findings of fact and recommendations on dispositive motions.

[2] Citations to the record refer to the CM/ECF system page number at the top of each page rather than the page numbers at the bottom of each filing.

foreclosing and selling the Property upon default, and releasing and canceling the Deed of Trust. (*Id.* at 10.) Under the terms of the Note and the Deed of Trust, Plaintiff would be in default if she failed to timely pay the full amount of each required monthly payment and subject to acceleration of the loan and foreclosure proceedings on the Property. (*Id.* at 3, 11.) Plaintiff alleges that Wells Fargo Home Mortgage (Defendant) is the mortgage servicer. (doc. 1-4 at 2, 83.)[3]

On October 5, 2016, Plaintiff became unemployed. (doc. 1-4 at 2.) Defendant "authorized an Unemployment Loan Forbearance," which permitted her to make payments of $25.00 for six months, and she "could pay the forbearance payments monthly, or in one lump sum." (*Id.* at 2-3.) Plaintiff made her first payment of $25.00 along with "a lump sum payment of $1,800" to cover the payments for the remaining five months. (*Id.*) She alleges that "[u]ntil that time, [she] was current on her mortgage." (*Id.* at 2.)

On July 28, 2017, Plaintiff began a new payment plan under which she made monthly payments of $1,290.00. (doc. 1-4 at 3.) She made those monthly payments "until Defendant notified her that she was ineligible because of an error that was made." (*Id.*) She submitted applications for a loan modification "on several occasions," but they were denied. (*Id.* at 14.) On December 19, 2017, Plaintiff sent a letter to Defendant appealing its denial of her loan modification application, stating that Defendant's decision to deny her application was based on "inaccurate information." (*Id.* at 14, 69-73.) It requested information about her loan including the payment history, account balance, loan documentation and other records. (*Id.* at 70-72.)

On February 21, 2018, Defendant notified Plaintiff that "the total amount required to cure the default under the note and deed of trust through February 16, 2018 [was] $13,553.38 and the total

---

[3] At some point, an assistant vice-president for Primary endorsed the note "without recourse" to Wells Fargo Bank, N.A. (doc. 18-1 at 5.)

amount required to payoff the debt through February 16, 2018 [was] $247,246.81." (doc. 1-4 at 3, 86.) On January 6, 2018, Defendant sent Plaintiff a letter notifying her that it "had made an error in applying credits due as performance incentives under HAMP [Home Affordable Modification Program]," but it "did not disclose how much and when the credits were applied." (*Id.* at 3.) After receiving this letter, Plaintiff was provided "a different balance of $17,574.00" "[w]ithout any explanation." (*Id.*)

On March 20, 2018, Plaintiff notified Defendant "of the inaccuracy in their accounting" and requested that it "provide a loan payment history for the life of the loan." (doc. 1-4 at 3.) In its response dated March 21, 2018, Defendant acknowledged her claim that the "payoff quote and reinstatement quote were $10,400.00 higher than [her] calculations," but noted that "the account was handled appropriately." (*Id.* at 88.) It stated that "once the payment history is provided," she could still provide additional documentation for any payment made that had not been applied to the loan, but that Defendant was unable to fulfill her request to postpone the foreclosure sale "because research on the payment history will complete in time to reinstate or payoff the loan prior to the scheduled sale date." (*Id.* at 88-89.) Plaintiff alleges that on March 26, 2018, she was verbally informed by an employee of Defendant that it "did not have the financial data available for ascertaining the correct balance," but it "would not stop the foreclosure." (*Id.* at 2.) The Property was "posted for foreclosure in a Sheriff's Sale set for April 3, 2018." (*Id*. at 3.)

On March 28, 2018, Plaintiff filed this *pro se* suit against Defendant in the 192nd District Court of Dallas County, Texas. (*See* doc. 1-4 at 2-13.) In her verified state court complaint, she alleges that Defendant is "performing as a debt collector" and is "duty bound to collect the debt accurately per Chapter 392 of the Texas Finance Code." (*Id.* at 3.) She contends that despite all her

3

attempts to bring billing errors to Defendant's attention, it continues to bill for amounts not actually due.  (*Id.*)  She alleges that Defendant decided to foreclose on the Property after obtaining an inflated valuation that made it appear to be "no longer under water."  (*Id.*).  She contends that the only payments she "missed were during the approved forbearance period."  (*Id.*)  Defendant "contacted [her] to convey that the only option for her was to apply for a Short Sale."  (*Id*. at 3-4.)  Though Plaintiff offered to remit the payments she missed during the period of forbearance, "minus the overpayments made during the [f]orbearance," Defendant refused her offer, informing "her that the payment would have been short . . . ."  (*Id.*)  Nevertheless, she alleges that Defendant "will not provide an accurate accounting so that [she] can ascertain a true balance to remit." (*Id.* at 4.)

Plaintiff asserts claims for breach of contract and anticipatory breach of contract, as well as claims for violations of the Texas Property Code and the Texas Finance Code.  (doc. 1-4 at 6-8.)  She seeks statutory damages, actual damages, exemplary damages, pre-judgment and post-judgment interest, costs, and attorney's fees.  (*Id*. at 12.)  She also seeks a declaratory judgment ordering mediation and declaring that any attempt to foreclose is prohibited during the process of litigation and mediation, injunctive relief "to bar any transfer of any interest of her Property," and a temporary restraining order to prevent Defendant from selling or taking possession of the Property.  (*Id*. at 8-11.) On March 28, 2018, the state court issued a Temporary Restraining Order (TRO) enjoining the sale of the Property, and the foreclosure sale was cancelled.  (*See* doc. 1-6.)

On April 13, 2018, Defendant removed this action to federal court on the basis of diversity jurisdiction under 28 U.S.C. § 1332.  (doc. 1 at 1.)  Plaintiff moved to remand the case to state court for lack of subject matter jurisdiction, but the request was denied. (*See* doc. 16.)  On September 21, 2018, Defendant moved to dismiss Plaintiffs' original complaint, (doc. 27), but Plaintiff did not

4

respond.  This motion is now ripe for recommendation.

## II.  DEFENDANT'S MOTION TO DISMISS

Defendant moves to dismiss Plaintiffs' amended complaint under Federal Rule of Civil

Procedure 12(b)(6) for failure to state a claim upon which relief can be granted. (doc. 17.)

## A.  <u>Legal Standard</u>

Rule 12(b)(6) allows motions to dismiss for failure to state a claim upon which relief can be

granted. Fed. R. Civ. P. 12(b)(6).  Under the 12(b)(6) standard, a court cannot look beyond the face

of the pleadings. *Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir. 1996); *see also Spivey v. Robertson*, 197

F.3d 772, 774 (5th Cir. 1999), *cert. denied*, 530 U.S. 1229 (2000).

Pleadings must show specific, well-pleaded facts, not mere conclusory allegations to avoid

dismissal. *Guidry v. Bank of LaPlace*, 954 F.2d 278, 281 (5th Cir. 1992).  The court must accept

those well-pleaded facts as true and view them in the light most favorable to the plaintiff. *Baker*, 75

F.3d at 196. "[A] well-pleaded complaint may proceed even if it strikes a savvy judge that actual

proof of [the alleged] facts is improbable, and 'that a recovery is very remote and unlikely.'" *Bell Atl.

Corp. v. Twombly*, 550 U.S. 544, 556 (2007) (citation omitted).  Nevertheless, a plaintiff must

provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of

action's elements will not do." *Id*. at 555; *accord Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)

(emphasizing that "the tenet that a court must accept as true all of the allegations contained in a

complaint is inapplicable to legal conclusions").  The alleged facts must "raise a right to relief above

the speculative level." *Twombly*, 550 U.S. at 555.  In short, a complaint fails to state a claim upon

which relief may be granted when it fails to plead "enough facts to state a claim to relief that is

plausible on its face." *Id*. at 570.

> A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'"

*Iqbal*, 556 U.S. at 678 (citations omitted).  When plaintiffs "have not nudged their claims across the line from conceivable to plausible, their complaint must be dismissed." *Twombly*, 550 U.S. at 570; *accord Iqbal*, 556 U.S. at 683.

As noted, a court cannot look beyond the pleadings in deciding a Rule 12(b)(6) motion. *Spivey*, 197 F.3d at 774; *Baker*, 75 F.3d at 196.  When a party presents "matters outside the pleadings," a court has "complete discretion" to either accept or exclude the evidence for purposes of determining the motion. *Isquith ex rel. Isquith v. Middle S. Utils., Inc.*, 847 F.2d 186, 193 n.3 (5th Cir. 1988); *accord Gen. Retail Servs., Inc. v. Wireless Toyz Franchise, LLC*, 255 F. App'x 775, 783 (5th Cir. 2007).  However, "[i]f . . . matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56," and "[a]ll parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." Fed. R. Civ. P. 12(d).

Nevertheless, "pleadings" for purposes of a motion to dismiss include attachments to the complaint. *See In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (citation omitted).  Similarly, documents "attache[d] to a motion to dismiss are considered part of the pleadings, if they are referred to in the plaintiff's complaint and are central to her claim[s]." *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498-99 (5th Cir. 2000) (citation omitted); *accord Benchmark Elecs., Inc.*, 343 F.3d at 725.  Accordingly, documents falling in these categories may be properly considered without converting the motion to dismiss into a motion for summary judgment.

Plaintiff attached to her complaint copies of the Notice of Acceleration and Notice of Trustee's Sale and various correspondence between her and Defendant. (*See* doc. 1-4 at 24-96.) These documents are therefore considered part of the pleadings. *See Katrina Canal Breaches Litig.*, 495 F.3d at 205.

Defendant attached to its motion to dismiss copies of the Note and the Deed of Trust. (doc. 18.) Because these documents are either referenced in Plaintiffs' complaint or are central to her general theory of the case, they are considered part of the pleadings. *See Collins*, 224 F.3d at 498-99. These documents are also matters of public record that can be judicially noticed in considering a Rule 12(b)(6) motion. *See* Fed. R. Evid. 201(b)(2); *Matter of Manges*, 29 F.3d 1034, 1042 (5th Cir. 1994) (taking judicial notice of "unimpeached certified copies of . . . deeds and assignments"). Because the attached documents are either part of the pleadings or subject to judicial notice, they may be considered without conversion of Defendant's motion into a motion for summary judgment. *See Norris v. Hearst Trust*, 500 F.3d 454, 461 n.9 (5th Cir. 2007).

**B.    Breach of Contract**

Defendant argues that Plaintiff's breach of contract claim fails as a matter of law because "she admits that she was in default on her payment obligations." (doc. 17 at 11-12.)

The essential elements of a breach of contract claim in Texas are: (1) the existence of a valid contract; (2) breach of the contract by the defendant; (3) performance or tendered performance by the plaintiff; and (4) damages sustained by the plaintiff as a result of the defendant's breach. *Mullins v. TestAmerica, Inc.*, 564 F.3d 386, 418 (5th Cir. 2009) (citing *Aguiar v. Segal*, 167 S.W.3d 443, 450

(Tex. App.–Houston [14th Dist.] 2005, pet. denied)).[4]

Plaintiff alleges that Defendant breached the Note because it "is purposely delaying and misleading Plaintiff to a point of foreclosure." (doc. 1-4 at 5.) She contends that if Defendant "had kept accurate record keeping, [the parties] would have agreed on a factual balance that [she] would have remitted." (*Id.* at 5-6.) She alleges that this was also a breach of the Deed of Trust. (*Id.* at 6.)

The complaint fails to allege that Plaintiff tendered full performance by making the required payments under the Note and the Deed of Trust; it states that she had been current on her mortgage until she became unemployed on October 5, 2016, and that "[t]he only payments she has ever [] missed were during the approved forbearance period." (doc. 1-4 at 2-3); *see Kiper v. BAC Home Loans Servicing, LP*, 884 F. Supp.2d 561, 575 (S.D. Tex. 2012), *aff'd by* 534 F. App'x 266 (5th Cir. 2013) (holding that plaintiff's wife (the actual borrower) had "defaulted on her obligation to repay the mortgage loan, which mean[t] [plaintiff] [could not] show the second element of a breach of contract claim, performance by plaintiff"). Because the complaint concedes that she failed to tender performance as required under the Note and the Deed of Trust, Plaintiff is unable to state a claim for breach of contract, and it should be dismissed. *See Williams v. Wells Fargo Bank*, N.A., 560 F. App'x 233, 238 (5th Cir. 2014) (holding that when "plaintiffs fail to allege they were current on their payments under the deed of trust, dismissal of their breach of contract claim is proper").

---

[4] "It is a long-recognized principle that federal courts sitting in diversity cases 'apply state substantive law and federal procedural law.'" *Shady Grove Orthopedic Assoc., P.A., v. Allstate Ins. Co.*, 559 U.S. 393, 417 (2010) (quoting *Hanna v. Plumer*, 380 U.S. 460, 465 (1965)). Here, the Note and the Deed of Trust were executed in Texas, and the Deed of Trust includes a choice of law clause stating that it is to be governed by the "law of the jurisdiction in which the Property is located." (*See* doc. 18-1.); *see De Aguilar v. Boeing Co.*, 47 F.3d 1404, 1413 (5th Cir. 1995) (quoting *Duncan v. Cessna Aircraft Co.*, 665 S.W.2d 414, 421 (Tex. 1984) ("[T]he law of the state with the most significant relationship to the particular substantive issue will be applied to resolve that issue."); *see also Faloona by Fredickson v. Hustler Magazine, Inc.*, 799 F.2d 1000, 1003 (5th Cir. 1986) (citing *Duncan*, 665 S.W.2d at 421) (contacts to take into account in determining the applicable law include the place of contracting and place of performance). The parties do not dispute that Texas law applies.

C.    **Anticipatory Breach of Contract**

Defendant seeks to dismiss Plaintiff's claim for anticipatory breach of contract on the basis that she failed to provide any factual or legal support for the claim.  (doc. 17 at 12.)

The elements of an anticipatory breach of contract action in Texas are "(1) an absolute repudiation of the obligation; (2) a lack of just excuse for the repudiation; and (3) damage to the nonrepudiating party." *Swim v. Bank of America, N.A.*, No. 3:11–CV–1240–M, 2012 WL 170758, at *4 (N.D. Tex. Jan. 20, 2012) (citing *Gonzalez v. Denning*, 394 F.3d 388, 394 (5th Cir. 2004)). "The party's intent to abandon a contractual obligation may be based on either words or actions, but such declaration must be expressed in positive and unconditional terms." *Wiley v. U.S. Bank, N.A.*, No. 3:11-CV-1241-B, 2012 WL 1945614, at *3 (N.D. Tex. May 30, 2012) (citation omitted).

Plaintiff alleges that in addition to breaching the contract, "Defendant may be close to violating that requirement [of good faith and fair dealing] to deliberately provoke acceleration of the note."  (doc. 1-4 at 6.)  She alleges that Defendant provided her "an inaccurate and inflated BPO [Broker Price Opinion] for [her] property in an effort . . . to force her into a short sale of the property" and "is not motivated to work with her to retain her home."  (*Id.* at 5.) She fails to allege which contract Defendant prevented her from performing, or which obligations in the Note or the Deed of Trust Defendant allegedly repudiated, however.[5]  There can be no breach or repudiation necessary to establish anticipatory breach without an obligation.  *See Sanghera v. Wells Fargo Bank, N.A.*, No. 3:10–CV–2414–B, 2012 WL 555155, at *5 (N.D. Tex. Feb. 21, 2012) ("With no obligation to act there is necessarily no breach of duty.").  Further, she fails to allege any facts showing that Defendant

---

[5]  Plaintiff alleges that Defendant's "failure to perform or enforce, in good faith, a specific duty or obligation, under the contract, constitutes a breach of that contract." (doc. 1-4 at 5-6.)  As more fully discussed below, however, there is no implied duty of good faith and fair dealing in contracts under Texas law.

positively and unconditionally demonstrated, through either words or actions, an intent to abandon its obligations under the Note or the Deed of Trust. Her conclusory allegation that Defendant was "using fraudulent and nefarious means to justify an attempt at selling [her] property at a bogus price," is not sufficient to demonstrate an intent to abandon Defendant's obligations under the Note or Deed of Trust. (doc. 1-4 at 6); *see Swim*, 2012 WL 170758, *5 (finding allegations that defendants repudiated their contractual obligations under the deed of trust by attempting to foreclose and not approving a loan modification did not demonstrate an intent to abandon defendant's obligations and at worse, demonstrated that defendants gave conflicting messages to plaintiffs); *Enis v. Bank of America, N.A.*, No. 3:12-cv-0295, 2013 WL 4741073 (N.D. Tex. Oct. 3, 2012) (finding allegation that the defendant sought foreclosure despite promising not to foreclose while loan modification was pending was not a contractual obligation in the deed of trust). Accordingly, Plaintiff's claim for breach of anticipatory contract fails, and Defendant's motion to dismiss it should be granted.

**D.**    **Violation of the Texas Property Code (Wrongful Foreclosure)**

Defendant moves to dismiss Plaintiff's claim for violations of the Texas Property Code on the basis that it creates no private cause of action. (doc. 17 at 13.) It contends that dismissal is appropriate because she fails to identify "what requirements or provisions within the nine subsections of Section 51.002 of the Texas Property Code were allegedly violated." (*Id.*) Defendant argues that, at best, she asserts a claim for wrongful foreclosure, but it fails as a matter of law because Plaintiff admits that no foreclosure sale has occurred and that she is in possession of the Property. (*Id.*)

Plaintiff argues that Defendant has violated § 51.002 of the Texas Property Code. (doc. 1-4 at 6-7.) She contends that "Defendant failed to give proper notice because Plaintiff's request for proof that all transfers of the lien were recorded timely as required by Texas Law were not answered

10

prior to the acceleration and collection action on the Note." (*Id.* at 7.)  She also contends that the mortgagee listed on the notice of foreclosure sale is not the current holder of the original note.  (*Id.*)  These contentions may be liberally construed as stating a claim for wrongful foreclosure for failure to send the requisite notices under Chapter 51 of the Texas Property Code rather than a stand-alone claim under the Texas Property Code.[6]

The purpose of a wrongful foreclosure action is to protect mortgagors against mistake, fraud, and unfairness in foreclosure proceedings.  *See In re Keener*, 268 B.R. 912, 921 (Bankr. N.D. Tex. 2001) (citing 30 Tex. Jur. 3d Deeds of Trusts and Mortgages § 177 (1998)).  In Texas, "a debtor may recover for wrongful foreclosure when an irregularity in the foreclosure sale contributes to recovery of an inadequate price of the property."  *Matthews v. JPMorgan Chase Bank, N.A.*, No. 3:11-CV-00972-M, 2011 WL 3347920, at *2 (N.D. Tex. Aug. 1, 2011).  The plaintiff must prove: "(1) a defect in the foreclosure sale proceedings; (2) a grossly inadequate selling price; and (3) a causal connection between the defect and the grossly inadequate selling price." *Hurd v. BAC Home Loans Servicing, LP*, 880 F. Supp. 2d 747, 766 (N.D. Tex. 2012) (citing *Sauceda v. GMAC Mortg. Corp.*, 268 S.W.3d 135, 139 (Tex. App.—Corpus Christi 2008, no pet.)).  A procedural defect may occur when the foreclosing party either "fails to comply with statutory or contractual terms," or "complies with such terms, yet takes affirmative action that detrimentally affects the fairness of the foreclosure proceedings."  *Matthews*, 2011 WL 3347920, at *2.  Nevertheless, recovery is not

---

[6] Because § 51.002 does not provide for a private right of action, courts have construed § 51.002 claims as claims for wrongful foreclosure. *See Nelson v. Wells Fargo Bank, N.A.*, No. 4:17-cv-298-A, 2017 WL 3405525, at *2 (N.D. Tex. Aug. 7, 2017) (citing *Palomino v. Wells Fargo Bank, N.A.*, No. 6:15-cv-00375-RWS-KNM, 2017 WL 989300, at *3 (E.D. Tex. Feb. 17, 2017)); *see also Ashton v. BAC Home Loan Servicing, L.P.*, No. 4:13-cv-810, 2013 WL 3807756, at *4 (S.D. Tex. Jul. 19, 2013) ("This Court has not found any cases that interpret section 51.002 to establish an independent right of action for damages. The section also does not contain its own enforcement mechanism.").

available merely by showing a defect in the foreclosure process; "it is also necessary that there be an inadequate selling price resulting from the defect." *Biggers v. BAC Home Loans Servicing, LP*, 767 F. Supp.2d 725, 729 (N.D. Tex. 2011).

Plaintiff admittedly remained in possession of the Property as of the date she filed suit, and her original complaint seeks injunctive relief to prevent Defendant from foreclosing on the Property. (*See* doc. 1-4.)  She therefore cannot allege that the Property has been sold for a grossly inadequate price. *See Garcia v. Bank of Am., N.A.*, No. 4:14-cv-2160, 2015 WL 12808271, at *4 (S.D. Tex. Mar. 23, 2015) ("[Plaintiff] has not alleged a violation of the Texas Property Code because no foreclosure has occurred."); *Ayers v. Aurora Loan Servs., LLC*, 787 F. Supp. 2d 451, 454 (E.D. Tex. 2011) ("Absent a sale, Plaintiff cannot state a claim under [§ 51.002] of the Property Code.").  Moreover, her statement that she remains in possession of the Property is fatal to any wrongful foreclosure action because recovery for wrongful foreclosure "is based on the mortgagor's [lost] possession." *See Everhart v. CitiMortgage, Inc.*, No. CIV.A. H-12-1338, 2013 WL 264436, at *7 (S.D. Tex. Jan. 22, 2013) (dismissing wrongful foreclosure claim where the plaintiff remained in possession of the property because "recovery under a wrongful foreclosure claim is based on the mortgagor's [lost] possession") (citing *Petersen v. Black*, 980 S.W.2d 818, 823 (Tex. App.—San Antonio 1998, no pet.)); *see also Medrano v. BAC Home Loans Servicing, LP.*, No. 3:10–CV–02565–M (BF), 2012 WL 4174890, *3 (N.D. Tex. Aug. 10, 2012) ("An attempted wrongful foreclosure is not an action recognized under Texas law.").  Accordingly, any wrongful foreclosure claim should be dismissed for failure to state a claim.

**E.     TDCPA**

Defendant argues that Plaintiff fails to allege sufficient facts to state claims for violations of

the Texas Debt Collection Practices Act (TDCPA), and such claims should be dismissed. (doc. 17 at 14-21.)

"The TDCPA prohibits debt collectors from using various forms of threatening, coercive, harassing or abusive conduct to collect debts from consumers." *Merryman v. JPMorgan Chase & Co.*, No. 3:12-CV-2156-M, 2012 WL 5409735, at *4 (N.D. Tex. Oct. 12, 2012), *adopted by* 2012 WL 5409749 (N.D. Tex. Nov. 5, 2012). It "allows a consumer to sue a debt collector attempting to collect a debt for threats, coercion, oppression, harassment, abuse, unfair or unconscionable collection methods, or fraudulent, deceptive or misleading misrepresentations made in connection with the collection of a debt." *Huerta v. CitiMortgage, Inc.*, No. 3:11-CV-1515-BH, 2011 WL 13228994, at *3 (N.D. Tex. Dec. 12, 2011) (citing Tex. Fin. Code §§ 392.301-304). A claimant must show: (1) the debt is a consumer debt; (2) the defendant is a debt collector, as defined under the TDCPA; (3) the defendant committed a wrongful act in violation of the TDCPA; (4) the wrongful act was committed against the plaintiff; and (5) the plaintiff was injured as a result of the defendant's wrongful act. *See* Tex. Fin. Code §§ 392.001-392.404. The TDCPA defines a "debt collector," in relevant part, as "a person who directly or indirectly engages in debt collection." *Id.* § 392.001(6). "Debt collection" is defined as "an action conduct, or practice in collecting, or in soliciting for collection, consumer debts that are due or alleged to be due a creditor." *Id.* § 392.001(5). This can include "actions taken in foreclosing real property." *See Sanghera*, 2012 WL 555155, at *7 (citation omitted).

### 1.    *Section 392.303(a)(2)*

Defendant argues that Plaintiff's claim for violation of § 392.303(a)(2) should be dismissed because she fails to provide facts supporting each element of this claim. (doc. 17 at 16.)

13

Section 392.303(a) (2) of the Texas Finance Code prohibits a debt collector from using "unfair or unconscionable means to collect or attempt to collect "interest or a charge, fee, or expense incidental to the [debt] obligation unless the interest or incidental charge, fee, or expense is expressly authorized by the agreement creating the obligation or legally chargeable to the consumer." Tex. Fin.Code § 392.303(a)(2). "To state a claim under Section 392.303(a)(2), a plaintiff must make more than a general assertion of 'wrongful charges' and must identify the unauthorized fees or penalties that a defendant imposed." *Adams v. U.S. Bank, N.A.*, No. 3:17-CV-723-B-BN, 2017 WL 10296307, at *10 (N.D. Tex. Dec. 4, 2017), *adopted by* 2018 WL 4621770 (N.D. Tex. Jan. 3, 2018) (citations omitted).

Plaintiff alleges that Defendant violated § 392.303(a)(2) because it "attempted to collect interest and/or charge a fee without any accounting for such balance that was not authorized under the loan and/or legally chargeable under state and federal law." (doc. 1-4 at 7.)  She fails, however, to allege facts showing that Defendant attempted to collect charges that are not authorized by the Note or the Deed of Trust.  In fact, the Note and the Deed of Trust authorize Defendant to charge fees and loan charges, including late fees, in connection with Plaintiff's default and Defendant's pursuit of remedies under those agreements.  (*See* doc. 18-1 at 3-4, 11-18.)  Plaintiff's claim under § 392.303(a)(2) fails for this reason.  *See Williams*, 560 F. App'x at 240 (finding the plaintiffs' general assertion of "wrongful charges" was insufficient to state claim under § 392.303(a)(2) where they failed to allege that imposition of charges was not authorized by the parties' agreement or legally chargeable to them); *Verdin v. Federal Nat. Mortg. Ass'n*, 540 F. App'x 253, 257 (5th Cir. 2013) (finding claim under § 392.303(a)(2) failed because the loan agreement expressly authorized the bank to demand fees and charges in the event of default); *Carrington v. Bank of America, N.A.*, No.

14

H–12–1542, 2013 WL 265946, at * 11 (S.D. Tex. Jan. 17, 2013) (finding plaintiffs' allegation that defendant added late fees when its agent represented that plaintiffs' modification would not be approved if they continued to pay their mortgage during the modification period failed to state a claim under § 392.303(a)(2) because the deed of trust specifically allowed imposition of late charges).

Although she disputes the total payoff balance provide by Defendant, Plaintiff does not identify any interest, charge, fee, or expense incidental to her mortgage that Defendant attempted to collect.  (*See* doc. 1–4 at 3.)  Without any specific facts to support, her conclusory allegations are insufficient to state a claim under § 392.303(a)(2).  *See Price v. U.S. Bank Nat. Ass'n*, No. 3:13-CV-175, 2014 WL 803722, at *6 (N.D. Tex. Feb. 28, 2014) (finding plaintiff's allegation that defendants' conduct violated § 392.303(a)(2) failed to state a claim without any specific facts in support); *Bircher v. Bank of New York Mellon*, No. 4:12-CV-171, 2012 WL 3245991, at * 3 (N.D. Tex. Aug. 9, 2012) (finding plaintiff failed to state a plausible allegation of violation of § 392.303(a)(2) where petition contained scant factual specificity regarding any misrepresented amounts); *Swim*, 2012 WL 170758, at *6 (finding conclusory allegation that defendants imposed wrongful charges on plaintiffs' mortgage account was insufficient to put defendants on fair notice of plaintiffs' claim under § 392.303(a)(2)).  Accordingly, Defendant's motion to dismiss Plaintiff's claim under § 392.303(a)(2) should be granted.

### 2.    *Section 392.202(c)(2)*

Defendant argues that Plaintiff's claim of violations under § 392.202 warrant dismissal because she "fails to allege that she notified Defendant in writing of an inaccuracy of an item in Defendant's file that relates to a debt being collected, fails to allege when she provided such

notification, and fails to identify the inaccuracy." (doc. 17 at 18.)

Section 392.202 sets forth requirements for a third-party debt collector when an individual disputes the accuracy of a debt being collected. *See Breitling v. LNV Corp.*, No. 3:15-CV-0703-B, 2015 WL 5896131, at *4 (N.D. Tex. Oct. 5, 2015) (quoting Tex. Fin. Code Ann. § 392.202(a)). It provides:

> (a) An individual who disputes the accuracy of an item that is in a third-party debt collector's or credit bureau's file on the individual and that relates to a debt being collected by the third-party debt collector may notify in writing the third-party debt collector of the inaccuracy. The third-party debt collector shall make a written record of the dispute. If the third-party debt collector does not report information related to the dispute to a credit bureau, the third-party debt collector shall cease collection efforts until an investigation of the dispute described by Subsections (b)-(e) determines the accurate amount of the debt, if any. If the third-party debt collector reports information related to the dispute to a credit bureau, the reporting third-party debt collector shall initiate an investigation of the dispute described by Subsections (b)-(e) and shall cease collection efforts until the investigation determines the accurate amount of the debt, if any. This section does not affect the application of Chapter 20, Business & Commerce Code, to a third-party debt collector subject to that chapter.

> (b) Not later than the 30th day after the date a notice of inaccuracy is received, a third-party debt collector who initiates an investigation shall send a written statement to the individual:

>> (1) denying the inaccuracy;

>> (2) admitting the inaccuracy; or

>> (3) stating that the third-party debt collector has not had sufficient time to complete an investigation of the inaccuracy.

> (c) If the third-party debt collector admits that the item is inaccurate under Subsection (b), the third-party debt collector shall:

>> (1) not later than the fifth business day after the date of the admission, correct the item in the relevant file; and

>> (2) immediately cease collection efforts related to the portion of the debt that was found to be inaccurate and on correction of the item send, to each person who has previously received a report from the third-party debt collector

16

containing the inaccurate information, notice of the inaccuracy and a copy of an accurate report.

(d) If the third-party debt collector states that there has not been sufficient time to complete an investigation, the third-party debt collector shall immediately:

(1) change the item in the relevant file as requested by the individual;

(2) send to each person who previously received the report containing the information a notice that is equivalent to a notice under Subsection (c) and a copy of the changed report; and

(3) cease collection efforts.

(e) On completion by the third-party debt collector of the investigation, the third-party debt collector shall inform the individual of the determination of whether the item is accurate or inaccurate. If the third-party debt collector determines that the information was accurate, the third-party debt collector may again report that information and resume collection efforts.

Tex. Fin. Code Ann. § 392.202. A third-party debtor collector's obligation to investigate the accuracy of a debt under § 392.202 is only triggered after the debtor provides the third-party debt collector written notice of the discrepancy. *See Breitling*, 2015 WL 5896131, at *5 (citing § 392.202(a)).

Here, Plaintiff argues that Defendant failed to provide an accurate debt statement and did not immediately cease debt collection efforts when notified of amount inaccuracies in violation of § 392.202(c). (doc. 1-4 at 6.) She alleges that on February 16, 2018, she received a notice of default that incorrectly stated that $13,553.38 was past-due and owing under the loan, and that "[w]ithout any explanation," she later received a different balance of $17,574.00. (*Id.* at 3, 86.) She claims that on March 20, 2018, she notified Defendant "via fax of the inaccuracy in their accounting and requested that they provide a loan payment history for the life of the loan." (*Id.* at 2, 64-67.) Attached to her complaint is a letter from Defendant dated March 21, 2018, which acknowledged her

claim that the "payoff quote and reinstatement quote were $10,400.00 higher than [her] calculations," but noted that "the account was handled appropriately." (*Id.* at 88.) It stated that "once the payment history is provided," Plaintiff can still provide additional documentation for any payment made that had not been applied to the loan, but that Defendant was unable to fulfill her request to postpone the foreclosure sale "because research on the payment history will complete in time to reinstate or payoff the loan prior to the scheduled sale date." (*Id.* at 88-89.) Plaintiff alleges that on March 26, 2018,[7] she was informed by an employee of Defendant that it "did not have the financial data available for ascertaining the correct balance," but it "would not stop the foreclosure." (*Id.* at 2.)

The complaint sufficiently pleads facts showing that Plaintiff notified Defendant of an inaccuracy in writing, when she provided notice, and the inaccurate amount. Accordingly, the motion to dismiss this claim on the grounds asserted by Defendant should be denied. *See Garcia v. Pharia, L.L.C.*, No. 5:12-CV-068-C, 2012 WL 12892731, at *3 (N.D. Tex. July 6, 2012) (denying motion to dismiss the plaintiffs' claim under Texas Finance Code § 392.202 because they alleged that they disputed the accuracy of the debt that the defendants attempted to collect and that the defendants did not cease collection efforts and verify the amount of the debt). As discussed below, however, the claim should be dismissed *sua sponte* because Plaintiff has not alleged that Defendant is a third-party debt collector under the TDCPA.

### 3.     *392.403(a)(2)*

Section 392.403(a) provides that a plaintiff can sue for actual damages sustained from a violation of the TDCPA. *See* Tex. Fin. Code Ann. § 392.403(a)(2).

Plaintiff alleges that she sustained actual damages "in the form of an additional mortgage

---

[7] The complaint identified the year as 2017 instead of 2018. (*See* doc. 1-4 at 2.)

payment and additional contracting cost" as a result of Defendant's violation of the TDCPA. (doc. 1-4 at 7.)  Because Plaintiff's § 392.202(c)(2) claim is subject to dismissal for the reasons discussed below, her request for actual damages under § 392.403(a)(2) should also be dismissed.

### 4.    *Section 392.301(a)(8)*[8]

Defendant argues that the claim that it violated § 392.301(a)(8) should be dismissed because Plaintiff fails to identify any of its actions that are prohibited by law.  (doc. 17 at 18-21.)

Section 392.301(a)(8) provides: "In debt collection, a debt collector may not use threats, coercion, or attempts to coerce that employ [the practice of] . . . threatening to take an action prohibited by law." Tex. Fin. Code Ann. § 392.301(a)(8).  Plaintiff alleges that Defendant violated § 392.301(a)(8) because it engaged in actions to collect on the Note without providing "the chain of title or servicer's agreement as requested by Plaintiff." (doc. 1-4 at 8.)  She contends that this conduct is prohibited by law because Defendant has no authority to collect on the Note or hold a substitute trustee's sale.  (*Id.*)

Plaintiff does not allege or assert any facts showing Defendant took or threatened to take an action prohibited by law.  Her allegations that Defendant could not foreclose because it failed to provide chain of title and was not the holder of the Note amount to what is commonly referred to as the "show-me-the-note" theory.  *See Bennett v. JPMorgan Chase*, No. 3:12-CV-212-N, 2012 WL 2864751, at *3 (N.D. Tex. June 12, 2012), *adopted by* 2012 WL 2864467 (N.D. Tex. July 12, 2012). "Advocates of this theory believe that only the holder of the original wet-ink signature note has the lawful power to initiate a non-judicial foreclosure."  *Wells v. BAC Home Loan Servicing, L.P.*, No. W-10-CA-00350, 2011 WL 2163987, at * 2 (W.D. Tex. Apr. 26, 2011) (citation and internal

---

[8]  Plaintiff cites this section as § 392.301(8).

quotation marks omitted).  The theory has been repeatedly rejected in this circuit.  *See Martins v. BAC Home Loans Servicing, L.P.*, 722 F.3d 249, 254 (5th Cir. 2013) ("We find no [ ] Texas authority requiring production of the 'original' note. The original, signed note need not be produced in order to foreclose."); *see also Cervantes v. U.S. Bank Nat'l Ass'n*, No. 3:12-CV-0661-D, 2012 WL 1605558, at *3 (N.D. Tex. May 8, 2012) (collecting cases).  Plaintiff's allegations based on this theory are meritless and fail as a matter of law.  *See Price*, 2013 WL 3976624, at *7 ("Plaintiff's contention that Defendant lacked authority to foreclose because it was not the 'actual holder of the original note or [of] a properly perfected security instrument' cannot support any claim against Defendant as a matter of law.").  Notably, Plaintiff does not allege that Defendant could not foreclose because there was no default on her mortgage.  *See Swim*, 2012 WL 170758, at *5 ("[T]he TDCPA 'does not prevent a debt collector from . . . exercising or threatening to exercise a statutory or contractual right of seizure, repossession, or sale that does not require court proceedings.'") (citing Tex. Fin. Code § 392.301(b)(3)); *Wildy v. Wells Fargo Bank, NA*, No. 3:12-CV-01831-BF, 2012 WL 5987590, at *3 (N.D. Tex. Nov. 30, 2012) (holding that "foreclosure or the threat of foreclosure, is not an action prohibited by law when a plaintiff has defaulted on [his] mortgage").  Because Plaintiff fails to state a plausible claim for relief under § 392.301(a)(8), this claim should be dismissed.

## F.    Declaratory and Injunctive Relief

Defendant contends that Plaintiff's requests for declaratory and injunctive relief should be dismissed because she fails to state a viable claim for relief.  (doc. 17 at 21.)  Because Defendant's motion to dismiss fails to defeat all of Plaintiff's TDCPA claims, this argument lacks merit.  Accordingly, the motion to dismiss Plaintiff's requests for declaratory and injunctive relief should also be denied.

### III. *SUA SPONTE* DISMISSAL

Although not explicitly listed as claims, the allegations in Plaintiff's complaint may be liberally construed as asserting claims for breach of the duty of good faith and fair dealing and for breach of a verbal agreement. Plaintiff's other remaining claims are the claims based on Defendant's alleged violations of §§ 392.202(c)(2), 392.303, 392.304, and 392.403 of the Texas Finance Code, as well as her requests for declaratory and injunctive relief and statutory damages, actual damages, exemplary damages, pre-judgment and post-judgment interest, costs, and attorney's fees. While Defendant either did not move to dismiss these claims, or its motion failed to successfully dismiss these claims, the Court may *sua sponte* dismiss them on its own motion under Rule 12(b)(6) for failure to state a claim as long as Plaintiff has notice of the Court's intention and an opportunity to respond. *See Carroll v. Fort James Corp.*, 470 F.3d 1171, 1177 (5th Cir. 2006) (citing *Shawnee Int'l., N.V. v. Hondo Drilling Co.*, 742 F.2d 234, 236 (5th Cir. 1984)). The fourteen-day time frame for filing objections to a recommended dismissal provides Plaintiff with notice and an opportunity to respond. *See Ratcliff v. Coker*, No. 9:08-cv-127, 2008 WL 4500321, at *3 n. 1 (E.D. Tex. Sept. 26, 2008).

### A.    <u>Breach of the Duty of Good Faith and Fair Dealing</u>

Plaintiff's allegation that Defendant is "purposely delaying and misleading [her] to a point of foreclosure" and engaging in conduct that violates "the requirement of good faith and fair dealing" appears to state a claim for breach of the duty of good faith and fair dealing. (See doc. 1–4 at 5.)

Under Texas law, "there is no general duty of good faith and fair dealing in ordinary, arms-length commercial transactions in Texas." *Marketic v. U.S. Bank N.A.*, 436 F. Supp. 2d 842, 855 (N.D. Tex. 2006). Such a duty can arise when it is "created by express language in a contract,"

however, or when "a special relationship of trust and confidence exists between parties to [a] contract." *Lovell v. W. Nat'l Life Ins. Co.*, 754 S.W.2d 298, 302 (Tex. App.—Amarillo 1988, writ denied). Though there are a limited number of circumstances where a plaintiff has "assert[ed] a special relationship . . . that [justifies imposing a] duty of good faith and fair dealing," Texas courts have consistently held that the mortgagor-mortgagee relationship is not a special relationship that generally gives rise to a fiduciary duty. *See Fed. Deposit Ins. Corp. v. Coleman*, 795 S.W.2d 706, 709-10 (Tex. 1990) ("The relationship of mortgagor and mortgagee ordinarily does not involve a duty of good faith.") (citing *English v. Fischer*, 660 S.W.2d 621, 622 (Tex. 1983)). The same is also true of a loan servicer and mortgagee. *See Williams v. Fed. Nat. Mortg. Ass'n*, No. 2:11-CV-157-J, 2012 WL 443986 at *3 (N.D. Tex. Feb. 13, 2012) (citation omitted). This is because "'[g]enerally, the relationship between a borrower and a lender [or loan servicer] is an arm's length business relationship in which both parties are looking out for their own interests.'" *Id.* (quoting *McKinney Ltd. v. Credit Suisse First Boston Mortg. Capital*, 192 S.W.3d 20, 36 (Tex. Civ. App.—Houston [14th Dist.] 2005, pet. denied)). Further, because the Deed of Trust asserts a lien on real property, it is not subject to the Uniform Commercial Code (UCC). *See Water Dynamics, Ltd. v. HSBC Bank USA Nat. Ass'n*, No. 4:11-CV-614-A, 2012 WL 34252, at *6 (N.D. Tex. Jan. 6, 2012) (quoting *Vogel v. Travelers Indem. Co.*, 966 S.W.2d 748, 753 (Tex. App.–San Antonio 1998, no pet.)) (citing Tex. Bus. & Com. Code § 9.104(10)); *see also Long v. NCNB–Texas Nat'l Bank*, 882 S.W.2d 861, 864 (Tex. App.–Corpus Christi 1994, no writ).

Plaintiff alleges that Defendant breached the Note because it "is purposely delaying and misleading Plaintiff to a point of foreclosure." (doc. 1-4 at 5.) She contends that the Note is a negotiable instrument governed by the UCC, and "Defendant has a duty of good faith and fair dealing

with regard to its obligations under the [N]ote." (*Id.* at 6.) She argues that Defendant "has an implied duty of good faith and fair dealing because of the imbalance of bargaining power." (*Id.*) She does not allege or state any facts showing there is a special relationship between her and Defendant, and she fails to identify any contractual provision creating a duty of good faith and fair dealing between them, however. Even accepting all facts in Plaintiff's complaint as true, it fails to "raise a right to relief above the speculative level." *See Nationsbank v. Perry Bros. Inc.*, 68 F.3d 466 (5th Cir. 1995) (finding no "special relationship" between a borrower and lender even though the borrower "depended upon [the lender] for its critical financing requirements, and often shared its business-related confidence with [the lender]"); *see Sullivan v. Bank of America, N.A.*, No. 3:14-CV-3186-G, 2014 WL 6977093, at *5 (N.D. Tex. Dec. 10, 2014) (finding no special relationship between a mortgagor and mortgagee even though there was an "imbalance in bargaining power"). The complaint further fails to explain how the lien against the Property is governed by the UCC. *See Water Dynamics, Ltd.*, 2012 WL 34252, at *6 (explaining that when "the Deed of Trust places a lien on real property, it is not governed by the UCC"). Any claim for breach of the duty of good faith and fair dealing fails and should be *sua sponte* dismissed for failure to state a claim.

**B.    <u>Breach of Verbal Agreement</u>**

Plaintiff alleges that Defendant verbally agreed to allow her to retain her home before initiating foreclosure procedures, but it breached that agreement when it set the Property for foreclosure sale on April 3, 2018. (doc. 1-4 at 3.)

The existence of a valid contract is an "essential element[ ] in a breach of contract claim" under Texas law. *Bridgmon v. Array Sys. Corp.*, 325 F.3d 572, 577 (5th Cir. 2003) (citation omitted). To show the existence of a contract, a plaintiff must establish, *inter alia*, an offer, "an acceptance in

strict compliance with the terms of the offer," and a meeting of the minds. *Southern v. Goetting*, 353 S.W.3d 295, 299 (Tex. App.—El Paso 2011, reh'g denied).  Under Texas law, a "loan agreement in which the amount involved in the loan agreement exceeds $50,000 in value is not enforceable unless the agreement is in writing and signed by the party to be bound or by that party's authorized representative."  Tex. Bus. & Com. Code § 26.02(b).  The term "loan agreement" includes any agreement or promise where a financial institution "loans or delays repayment of or agrees to loan or delay repayment of money, goods, or another thing of value or to otherwise extend credit or make a financial accommodation."  *Id.* at § 26.02(a)(2); *see Gordon v. JPMorgan Chase Bank, N.A.*, 505 F. App'x 361 (5th Cir. 2013).  This means that an agreement for a loan modification under a mortgage agreement exceeding $50,000.00 is subject to the Texas Statute of Frauds and must be in signed writing to be enforceable.  *See* Tex. Bus. & Com. Code § 26.02(a), (b); *see Milton v. U.S. Bank Nat. Ass'n*, 508 F. App'x 326, 328 (5th Cir. 2013) (collecting cases).

Liberally construed, Plaintiff's complaint asserts a breach of contract claim based on a purported oral agreement with Defendant.  Notably, Plaintiff asserts no facts showing either that her mortgage was less than $50,000, or that Defendant's alleged promises were at some point reduced to writing.  *See* Tex. Bus. & Com. Code § 26.02(b); *see also Milton*, 508 F. App'x at 328-29 (holding that the "plaintiff's breach of contract claim [was] barred by the statute of frauds" "because there was no written agreement to delay [the] foreclosure" while her application for a loan modification was reviewed).  She also fails to allege or assert any facts indicating that an exception to the statute of frauds applies here.  *See Hurd*, 880 F. Supp.2d at 759 (dismissing the plaintiff's "claim for breach of a promise to modify" where the promise was barred by the statute of frauds and no exception applied).  Accordingly, any claim for breach of the promise to refrain from foreclosing on the

Property should be dismissed *sua sponte* for failure to state a claim.

**C.      Remaining TDCPA Claims**

Plaintiff asserts claims against Defendant for violating §§ 392.202(c)(2), 392.303, 392.304, and 392.403 of the Texas Finance Code. (doc. 1-4 at 6-8).

*1.      Section 392.202(c)(2)*

Section 392.202(a) requires a "third-party debt collector," upon a proper request from the alleged debtor to the collector, to either investigate the validity of a debt or cease collection efforts until such an investigation has been completed. Tex. Fin. Code § 392.202(a). The TDCPA tracks the definition of "third-party debt collector" of the Federal Debt Collection Practices Act (FDCPA). *See id.* § 392.001(7) ("Third-party debt collector means a debt collector, as defined by 15 U.S.C. Section 1692a(6)" of the FDCPA. The FDCPA defines "debt collector" as "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." 15 U.S.C. § 1692a(6). Section 1692a(6) expressly excludes "any person collecting or attempting to collect any debt owed or due or asserted to be owed or due another to the extent such activity . . . concerns a debt which was not in default at the time it was obtained by such person." *Id.* § 1692a(6)(F)(iii). Courts have therefore held that "a debt collector does not include the consumer's creditors, a mortgage servicing company, or an assignee of a debt, as long as the debt was not in default *at the time it was assigned*." *CA Partners v. Spears*, 274 S.W.3d 51, 79 (Tex.App.-Houston[14th Dist.] 2008, pet. denied) (quoting *Perry v. Stewart Title Co.*, 756 F.2d 1197, 1208 (5th Cir. 1985)) (emphasis added). In short, "[i]f a debt is in default at the time the assignee acquires his interest in the debt, he is a 'third-party debt collector'

within the contemplation of [ ] section 392.101(a) of the [TDCPA]." *Adams v. Bank of Am.*, No. 4:10-CV-709, 2011 WL 5080217, at *7 (E.D. Tex. Oct. 26, 2011), *aff'd by* 475 F. App'x 526 (5th Cir. 2012).

Plaintiff alleges that Defendant is the entity that services her loan; she does not contend that it became the mortgage servicer after she was in default, and the complaint states that Defendant serviced the loan throughout all relevant periods giving rise to this lawsuit. (doc. 1-4 at 2.) Because Plaintiff fails to produce facts indicating that Defendant came into the picture after default, *sua sponte* dismissal of this claim is warranted. *See, e.g., Cervantes v. United States Bank Nat'l, Ass'n*, No. 3:12-CV-0661-D, 2012 WL 1605558 at *4 (N.D. Tex. May 8, 2012) ("Plaintiffs allege that U.S. Bank is the entity that serviced their loan, and that it took over from the original lender in 2010, before plaintiffs were in default. Accordingly, plaintiffs' state-court petition affirmatively establishes that U.S. Bank is not a debt collector under the FDCPA or a third-party debt collector under the [TDCPA]."); *Mustapha v. HSBC Bank USA, NA*, No. 4:11-cv-0428, 2011 WL 5509464 at *4 (S.D. Tex. Nov. 10, 2011) ("In this case, there are no allegations made by the [plaintiffs] that the [d]efendants were assigned the debt after the debt was already in default; therefore, the [plaintiffs'] pleadings themselves establish that the [d]efendants are not 'debt collectors.'").[9]

### 2. *Sections 392.303 and 392.304*

Section 392.303(a) prohibits a debt collector from using "unfair or unconscionable means that employ [certain prohibited] practices" during debt collection. Tex. Fin. Code Ann. § 392.303(a). Section 392.304(a) prohibits a debt collector from using "a fraudulent, deceptive, or misleading

---

[9] Plaintiff's motion to remand alleged that "Defendant is a third-party debt collector as defined by [TDCPA]," (doc. 7 at 2), but offers nothing to support this conclusory allegation. Even considered, it is insufficient to support a claim based on violations of the TDCPA.

representation that employs [certain prohibited] practices" during debt collection, or obtaining information concerning a consumer. *Id.* § 392.304(a). Section 392.304(a) lists eighteen specific practices that violate the Act and includes a "catch-all" provision. *See id.* § 392.304(a)(1)-(19). For purposes of a misrepresentation under § 392.304(a), that party "must have made a false or misleading assertion." *Sanghera*, 2012 WL 555155, at *9.

Plaintiff complains that Defendant "engaged in actions to collect on [the Note]" that were "fraudulent, deceptive, and/or misleading representations actionable under Texas Finance Code §§ 392.303 and 392.304" because it lacked authority to collect on the Note. (doc. 1-4 at 8.) First, Plaintiff does not identify a specific provision of §§ 392.303(a) or 392.304(a) or a particular "prohibited practice" that Defendant allegedly violated. This failure alone warrants dismissal of any claims under these sections. *See Iqbal*, 556 U.S. at 678 (to survive dismissal, the complaint must provide sufficient "factual content [to] allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged"). Plaintiff also fails to explain what actions Defendant undertook to "collect" on the Note. To the extent she implicitly refers to Defendant's attempt to foreclose on the Property, her allegations fail to raise a reasonable inference that this "action" was unconscionable, fraudulent, deceptive, or misleading, given that Defendant could exercise the power of sale without producing the Note. *See Martins*, 722 F.3d at 255. Any claims under §§ 392.303(a) and 392.304(a) fail and should be dismissed *sua sponte* for failure to state a claim. *See Puente v. CitiMortgage, Inc.*, No. 3:11-CV-2509-N, 2012 WL 4335997, at *6 (N.D. Tex. Aug. 29, 2012) (dismissing TDCPA claim where the plaintiffs neither pointed to specific provisions that the defendant allegedly violated, nor supplied sufficient facts to state a plausible claim for relief—other than their invalid theory that the defendant could not foreclose because it was not the holder of the

note).

### 3.    *Section 392.403*

Section 392.403 enables a person to sue for "actual damages sustained as a result of a violation of [the TDCPA]." Tex. Fin. Code Ann. § 392.403(a)(2). Further, "[a] person who successfully maintains an action under Subsection (a) is entitled to attorney's fees reasonably related to the amount of work performed and costs." *Id.* § 392.403(b).

Because Plaintiff fails to state a cognizable TDCPA violations claim against Defendant, her requests for actual damages and attorney's fees under § 392.403 likewise fail. Accordingly, any claims asserted under § 392.403 should be dismissed *sua sponte* for failure to state a claim.

### D.    <u>Declaratory Relief</u>

Plaintiff seeks declaratory judgment that: (1) Defendant be ordered to comply with the terms of Mediation as set forth in the Motion and Order for Mortgage Mediation;" (2) any attempt to foreclose the Property is prohibited "during the process of this litigation and/or Mediation;" (3) "any attempt to foreclose pursuant to the Texas Property Code Sec. 51.001 *et seq*[.] is an action to collect debt that mandates Defendant's compliance with the [TDCPA];" and (4) Defendant be ordered to "produce the accurate accounting of the history of the mortgage, inclusive of all payments, fees assessed, and disbursements for inspection by [Plaintiff] and or [her] document examiner prior to proceeding with any foreclosure proceedings." (doc. 1-4 at 8, 10.)

When a declaratory judgment action is filed in state court and is subsequently removed to federal court, "it is converted to one brought under the federal Declaratory Judgment Act, 28 U.S.C. §§ 2201, 2202." *Bell v. Bank of America Home Loan Servicing LP*, No. 4:11-CV-02085, 2012 WL 568755, at *8 (S.D. Tex. Feb. 21, 2012). The Declaratory Judgment Act (the Act) allows a federal

court to declare the rights and legal relations of any interested party. 28 U.S.C. § 2201. The availability of a declaratory judgment depends upon the existence of a judicially remediable right, however. *See Bell*, 2012 WL 568755, at *8. The Act "does not create a substantive cause of action" and "is merely a vehicle that allows a party to obtain an early adjudication of an actual controversy arising under other substantive law." *Metropcs Wireless, Inc. v. Virgin Mobile USA, L.P.*, 3:08-CV-165-D, 2009 WL 3075205, at *19 (N.D. Tex. Sept. 25, 2009) (citations and internal quotation marks omitted). In other words, the Act is an authorization and not a command, and allows federal courts broad, but not unfettered, discretion to grant or refuse declaratory judgment. *Id.*

Given Plaintiff's failure to state a viable claim for relief against Defendant or show that a genuine controversy exists between the parties, her declaratory judgment action should be dismissed *sua sponte*. *See Bell*, 2012 WL 568755, at *8 (denying the plaintiff's request for declaratory judgment where she had alleged no facts leading to a conclusion that a present controversy existed between her and the defendant); *Turner v. AmericaHome Key, Inc.*, 2011 WL 3606688, at *56 (N.D. Tex. Aug. 16, 2011), *aff'd by* 2013 WL 657772 (5th Cir. Feb. 22, 2013) (declining to entertain the plaintiff's request for declaratory judgment where he had not pleaded a plausible substantive claim).

**E.    Injunctive Relief**

Plaintiff seeks a temporary restraining order, a temporary injunction, and a permanent injunction to prevent Defendant from foreclosing, selling or attempting to sell the Property, and from disturbing or attempting to disturb her peaceable possession and enjoyment of the Property. (doc. 1-4 at 12.)

To obtain injunctive relief, a plaintiff "is required to plead and prove, *inter alia*, 'a substantial likelihood of success on the merits.'" *Jackson v. Fed. Home Loan Mortg. Corp.*, No. 4:11-CV-507-

A, 2011 WL 3874860, at *3 (N.D. Tex. Sept. 1, 2011) (citing *DSC Commc'ns Corp. v. DGI Techs., Inc.*, 81 F.3d 597, 600 (5th Cir. 1996)).  Here, because dismissal of all Plaintiff's claims is warranted on the merits, she cannot establish any likelihood of success on the merits.  *See Jackson*, 2011 WL 3874860, at *3.  Accordingly, Plaintiff's request for injunctive relief should be dismissed *sua sponte*.

F.  <u>**Request for Damages, Attorney's Fees, Costs, and Interest**</u>

Plaintiff requests actual damages, exemplary damages, and "all statutory damages, including double or treble damages," pre-judgment and post-judgment interest, costs, and "reasonable and necessary attorney's fees, if applicable." (doc. 1-4 at 8, 12.)  Because Plaintiff's substantive claims are subject to dismissal on the merits, she is not entitled to any damages.  *See Ainsworth v. Wells Fargo Home Mortg., Inc.*, No. 3:14-CV-1942-M, 2016 WL 1165919, at *9 (N.D. Tex. Feb. 24, 2016), *adopted by* 2016 WL 1161993 (N.D. Tex. Mar. 23, 2016).  Further, she has been a *pro se* party for the entirety of this suit and may not recover attorney's fees.  *See Danial v. Daniels*, 162 F. App'x 288, 291 (5th Cir. 2006) ("Attorney's fees are not available to a non-attorney pro se litigant."); *see also Vaksman v. C.I.R.*, 54 F. App'x 592 (5th Cir. 2002) ("As a *pro se* litigant, [the petitioner] is not entitled to attorney['s] fees because, quite simply, he did not actually 'pay' or 'incur' attorney['s] fees.").  She is also not entitled to attorney's fees, costs, and interest because she has failed to plead any viable causes of action. *See Avila v. Mortgage Elect. Registration Sys., Inc.*, No. 4:12-CV-830, 2012 WL 6055298, at *7 (S.D. Tex. Dec. 5, 2012) (dismissing request for "all costs and attorney's fees" where all of the plaintiff's claims were subject to dismissal).  Accordingly, Plaintiff's requests for all monetary damages, attorney's fees, costs, and pre- and post-judgment interest should be dismissed *sua sponte*.

## IV.  OPPORTUNITY TO AMEND

Notwithstanding a plaintiff's failure to plead sufficient facts, "district courts often afford plaintiffs at least one opportunity to cure pleading deficiencies before dismissing a case, unless it is clear that the defects are incurable or the plaintiffs advise the court that they are willing or unable to amend in a manner that will avoid dismissal." *In re Am. Airlines, Inc., Privacy Litig.*, 370 F. Supp. 2d 552, 567-68 (N.D. Tex. 2005) (citing *Great Plains Trust Co. V. Morgan Stanley Witter & Co.*, 313 F.3d 305, 329 (5th Cir. 2002)).  Nevertheless, courts may appropriately dismiss an action with prejudice without giving an opportunity to amend when the plaintiff fails to respond, and the plaintiff has had ample opportunity to amend the complaint.  *See Rodriguez v. United States*, 66 F.3d 95, 97 (5th Cir. 1995) (noting passage of 327 days).  Dismissal with prejudice is also appropriate if a court finds that the plaintiff has alleged his or her best case.  *Jones v. Greninger*, 188 F.3d 322, 327 (5th Cir. 1999).

Here, although Plaintiff has not amended her complaint since filing this action, she failed to file a response to the motion to dismiss after being specifically invited to do so.  (*See* doc. 19.) Nevertheless, it does not appear that Plaintiff has stated her best case with respect to any of her claims. She should accordingly be offered an opportunity to amend her complaint to sufficiently state a claim for relief.

## V.  RECOMMENDATION

If Plaintiff does not file an amended complaint that states a claim for relief within the 14 days allowed for objections to this recommendation, or a deadline otherwise set by the Court, Defendant's motion to dismiss should be **GRANTED in part**, and Plaintiff's remaining claims against it should be dismissed *sua sponte* with prejudice.  If Plaintiff timely files an amended complaint, however,

Defendant's motion to dismiss should be **DENIED as moot**, and the action should be allowed to proceed on the amended complaint.

      **SO RECOMMENDED** on this 17th day of July, 2019.

                     IRMA CARRILLO RAMIREZ
                     UNITED STATES MAGISTRATE JUDGE

### INSTRUCTIONS FOR SERVICE AND
### NOTICE OF RIGHT TO APPEAL/OBJECT

A copy of these findings, conclusions and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

                     IRMA CARRILLO RAMIREZ
                     UNITED STATES MAGISTRATE JUDGE